## APPEAL OF A. D. SCOTT.

[J. M. MILLER, FOR USE, v. JACOB DUVALL ET AL.]

FROM THE DECREE OF THE COURT OF COMMON PLEAS OF WASHINGTON COUNTY.

Argued October 17, 1888—Decided January 7, 1889.

1. When a judgment has been opened to let in a defence thereto, under exception, an appeal may be taken from the order, after the trial of the issue awarded, and at the same time a writ of error to the judgment upon the issue: English's App., 119 Pa. 533.
2. Upon the reversal, on the appeal taken, of the order opening the judgment, the trial of the issue has been made abortive, and on the writ of error taken with the appeal the judgment in favor of the defendant will be vacated.
3. If the assignee of a judgment became the purchaser of it in good faith relying upon a certificate of no defence given by the defendant, there is an end of any defence by the latter upon the ground of usury or for any other reason.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK, WILLIAMS and HAND, JJ.

Nos. 150 and 151 October Term 1888, Sup. Ct., court below, No. 134 May Term 1885, C. P.

On April 28, 1885, Jacob Duvall, a defendant in a judgment in favor of James M. Miller, for use of A. D. Scott, against Jacob Duvall and Alexander Duvall, entered to No. 134 May Term 1885, as a revival of No. 5 May Term 1879, presented his petition setting forth a history of the indebtedness represented by the judgment; that as appeared by the record to No. 5 May Term 1889, the judgment entered thereto was assigned to A. D. Scott on March 9, 1885, "but your petitioner avers, believes and expects to be able to prove that the said assignment was merely colorable and that no real interest in said judgment passed or was intended to pass by the same to A. D. Scott and the said judgment is still owned by the said James M. Miller;" that when the writ of scire facias to revive was served upon him he was induced by representations made by James M. Miller not to appear and to suffer judgment to be entered by default; that judgment had been entered against him for $692.97, without allowing him credit for $212.50 paid on account of the principal, and for other payments by way of usurious interest, etc., praying that the judgment be opened, etc.

To the rule granted upon this petition, answers were filed by James M. Miller and by A. D. Scott, that of Mr. Scott setting forth that he had taken the assignment of the judgment from James M. Miller on March 9, 1885, relying upon a certificate of no defence signed by the petitioner and dated February 28, 1885.

From the testimony taken and filed in the proceeding, it appeared, inter alia, from the cross-examination of Mr. Scott that, together with the certificate of no defence received when he took the assignment, he also had the guaranty of Mr. Miller; that he bought the judgment as an investment; that the same day he received the assignment he sent the papers by mail to his attorney with directions to collect the money. The petitioner testified in support of the averments of his petition, relating how the certificate of no defence had been procured from him, and on cross-examination, testified in the manner set forth in the opinion of this court.

### Charge of Court below.

The court below, HART, P. J., on the argument of the rule, said:

If A. D. Scott, the use plaintiff, purchased the original judgment, No. 5 May Term, 1879, in good faith, relying on the defendant Jacob Duvall's certificate of no defence, there can be no doubt that Duvall is completely estopped thereby from setting up the defence of usury, even though Scott may have relied also upon the verbal guaranty of the legal plaintiff. But it is equally clear that if, as alleged, the certificate was obtained by Miller under an arrangement with Scott for the purpose of "heading off" Duvall, and compelling him to pay the judgment in full with the usurious interest included, there is no estoppel; the case stands as if there had been no assignment of the original judgment; and Duvall's right to have it purged of the excessive interest is unquestionable. On this point I am of opinion that the depositions and exhibits before me raise such a question of fact as entitles the defendant to an issue and a trial by jury. And it is so ordered. Exception.

At the trial of the issue awarded, on May 30, 1888, Mr. Scott testified in his case in chief that he had bought the judgment on the faith of the certificate of no defence; on cross-examination, he testified, as in his examination on the rule, that he bought the judgment as an investment, but that on the same day he mailed the assignment to his attorneys with directions to collect at once, and further that he would not have bought the judgment if Miller had not guaranteed it.

The court, McILVAINE, P. J., after reviewing the testimony, charged the jury:

[The question then for your determination resolves itself into this: did Mr. Scott purchase this judgment bona fide; did he pay for it the sum he said he did; did he, in making the purchase, rely in any degree upon the statements made by Duvall in his written certificate of no defence? If he did, then the defendant is estopped from asking a credit for the usurious interest paid to Mr. Miller, and your verdict should be for the plaintiff for the full amount of his claim. On the other hand, if you believe Mr. Scott has not given a true or

full statement of the manner in and the purpose for which he purchased the judgment, and that he was acting in collusion with Miller, and the sale of this judgment was not made in in good faith but was made for the purpose of assisting Mr. Miller in collecting more money from Duvall than he himself otherwise could have collected by law, then the defence of usury can be set up against Mr. Scott, and the defendant will be entitled to a credit on the principal debt of the interest paid Miller in excess of six per cent. In passing on the question of good faith on the part of Mr. Scott, you will carefully consider all the testimony in the case. The allegation is that Mr. Scott acted in collusion with Mr. Miller; that they conspired together to collect from Duvall this usurious interest, and the certificate of no defence necessary to accomplish their purpose was obtained from Duvall for this purpose.] [3] Such conduct on the part of Miller and Scott would be a fraud on the rights of Duvall. Fraud is never to be presumed, but must be clearly and satisfactorily proven, or facts must be clearly and satisfactorily proven from which fraud can be fairly inferred. Mere suspicion is not sufficient, but the testimony must rise to the dignity of satisfactory proof. It is not necessary for us to refer to the testimony in the case. You will readily recall it without assistance from the court. [The only controverted question, in our opinion, in the case, as we have already said, is as to the character of the purchase of this judgment: was it sham, or was it a bona fide purchase?] [3] . . . . . .

Now, gentlemen, this is, as has been remarked, a rather important case. It is one of those cases where, if you believe the testimony of the plaintiff, he is entitled to recover; if however, there is in the facts surrounding the transaction sufficient to produce a conviction in your minds that Mr. Miller and Mr. Scott were perpetrating what really would be a fraud upon this party, and that this assignment was a sham, then your verdict should be for the defendant. Of course, if this certificate of no defence had nothing to do with the purchase of this judgment, and you think Mr. Scott was falsifying when he said it did, it would amount to nothing; it would not avail him anything if he purchased solely on the guaranty of Mr. Miller. But if it in any degree influenced

Charge of Court below.

him to buy the judgment, then Mr. Duvall is bound by the certificate, and he will have to stand the consequence of signing it; because he (Scott) had a right to rely upon both the certificate and guaranty, but if he relied on the guaranty and didn't rely upon the certificate, then he would have to stand the credit of the usurious interest. [Now, the plaintiff asks me to take this case from the jury and say that there was no evidence of collusion between Mr. Scott and Mr. Miller, and that the defendant is not entitled to credit for the usury he has paid. This judgment was opened by Judge HART, who directed an issue to be formed that these very questions should be submitted to a jury, and therefore I consider it is my duty to submit them to you regardless of what my opinion would be; I therefore leave the questions to you for your determination. You are the proper judges of the credibility of witnesses.] [3] The agreement of counsel as to the amount of the verdict is, that if you believe this transfer was valid and Mr. Scott was influenced in any degree by the certificate of no defence, then your verdict will be for the plaintiff for $500.01, the amount handed to you by Mr. Dougan; on the other hand, if you believe he purchased entirely independent of the certificate of no defence, or that this sale on his part as well as Mr. Miller's was not in good faith, then you will find in favor of the plaintiff for $91.87, the amount handed you by Mr. Irwin.

The plaintiff respectfully requests the court to instruct the jury as follows:

1. If the jury believe from the evidence that Scott bought the judgment from Miller on the faith of Duvall's certificate of no defence, that fact is conclusive in favor of the use plaintiff's right to recover, there being no evidence of the fraudulent procurement and use of it by Miller and Scott in collusion to defraud Duvall.

Answer: This point as a whole is refused. We leave it to the jury to determine whether there was any collusion between Miller and Scott; if they find there was not, then the certificate of no defence would be conclusive if Scott bought the judgment on the faith of it.[1]

2. On the whole evidence the court is respectfully requested to instruct the jury that the verdict must be for the plaintiff.

Answer: Refused if the point means that the plaintiff is entitled to his whole claim. It is admitted that he is entitled to a verdict for $91.87.[2]

The jury returned a verdict for the plaintiff for $91.87. A rule for a new trial having been discharged, judgment was entered upon the verdict, when the plaintiff took an appeal, assigning as error, the order of December 6, 1886, opening the judgment and awarding the issue, and also a writ of error, specifying that the court erred:

1, 2. In the answers to plaintiff's points.[1] [2]

3. In the portions of the charge embraced ⋔ [ ] [3]

*Mr. H. M. Dougan,* for the appellant:

1. Prima facie, the certificate of no defence fully protected Scott in his claim to have the entire amount of the revived judgment. To overcome the certificate, the burden was upon the petitioner to produce evidence that the assignment under which Scott claimed was merely colorable; that no real interest passed or was intended to pass from Miller to Scott, and that Miller still owned the judgment. It is believed that the measure of proof would be that prescribed in English's App., 119 Pa. 533, namely, clear, precise and indubitable. But if that is too high a standard, there should at least have been some evidence of collusion between Miller and Scott: Elkin v. Janson, 13 M. & W. 655. There was not a particle of evidence, direct or indirect, upon the subject. It was therefore error to open the judgment and award the issue.

2. On the authority of English's App., 119 Pa. 533, the judgment on the trial of the issue should be reversed, because, " if it was error to open the judgment upon the facts as they stood when the order was made, it was error to submit the case to the jury and the trial goes for nothing." Moreover, neither in the aggregate, nor in detail, did the facts in evidence tend to show a conspiracy between Miller and Scott whereby Duvall was to be prevented from availing himself of his defence of usury. In no degree did they point to the conclusion which Duvall sought to establish. Speculative inferences are not allowable and cannot be regarded as evidence:

Arguments.

Battles v. Laudenslager, 84 Pa. 451; Stouffer v. Latshaw, 2 W. 165; Egbert v. Payne, 99 Pa. 244.

*Mr. R. W. Irwin* (with him *Mr. E. E. Crumrine* and *Mr. Boyd Crumrine*), for the appellee:

1. The petitioner was not required to make out his case entirely by evidence of facts within his own knowledge. There is enough in the testimony of Mr. Scott to warrant the submission of the case to a jury upon the question of the good faith of the assignment and of the reception of the certificate of no defence. Of course, what was in the minds of the parties cannot be shown by direct evidence, but does not the whole transaction expose the fact that the assignment, with the procurement and use of the certificate, was colorable,—a trap to obtain a revival judgment by adverse process, and a levy and sale of defendant's property, in order to defeat the credits to which defendant was entitled? Hopkins v. West, 83 Pa. 109; Montague v. McDowell, 99 Pa. 265.

2. A declaration, to be effective as an estoppel, must be made to him who acts upon it, and who, after the exercise of due diligence, has reason to rely upon it as true, and is thereby induced to do what he otherwise would not have done: Fin-letter, J., in Mecouch v. Loughery, 12 Phila. 416. English's App., 119 Pa. 533, it will be seen on the slightest examination, is an authority only upon the question of practice, not upon the question of evidence. In this case, Mr. Scott having testified that he bought the judgment for an investment, but sent the assignment the same day to his attorney for collection, and that he would not have bought but for the guaranty of Miller, was it not a question for a jury to pass upon whether the certificate had any influence at all in the purchase, or whether when it was taken it was relied upon, if at all, simply in its efficacy as an estoppel and not because of the statements of fact in it? This court has said in a number of cases, appeals such as this: "On an application to open a judgment, it is proper for the court to weigh the evidence, and to decide according to the preponderance thereof, and we will not reverse for the exercise of a sound discretion:" Wernet's App., 91 Pa. 319; Kneedler's App., 92 Pa. 428; Lamb's App., 89 Pa. 407; Hickernell's App., 90 Pa. 328.

OPINION, MR. JUSTICE PAXSON:

SCOTT'S APPEAL.

This was an appeal by the use-plaintiff from the decree of the court below, opening the judgment No. 134 May Term 1885, and awarding an issue. The issue was tried in the court below, with the result of a verdict materially reducing the amount of the judgment. The case now comes up with an appeal from the order opening the judgment, and a writ of error to the judgment in the feigned issue. This is in accordance with the proper practice: English's Appeal, 119 Pa. 533; Citizen's B. & L. Ass'n v. Hoagland, 87 Pa. 326.

The order of court opening the judgment is assigned for error. If this point is well taken the whole proceeding must be reversed, including the trial of the issue: English's Appeal, supra.

The original judgment was No. 5 of May Term 1879, in which James M. Miller obtained a judgment, by confession upon a warrant of attorney, against Jacob Duvall and Alexander Duvall, for $495. On March 9, 1885, Miller, in consideration of $520, then paid him by A. D. Scott, the use-plaintiff, assigned the judgment to Scott. It also appeared that Scott had bought the judgment upon the faith of a certificate of no defence signed by Jacob Duvall. Scott then caused the judgment to be revived against Jacob Duvall, the other defendant, Alexander Duvall, being then deceased, and a return of mortuus est as to him. After the entry of judgment upon the scire facias, No. 134 May Term 1885, for $692.57, Jacob Duvall presented his petition to the court below, praying that both the original judgment and the judgment upon the scire facias be opened, and that he be let into a defence. His petition set forth the history of the indebtedness which resulted in the original judgment; averred that this judgment contained usury; that he had not received credit for the payment of $212.50 on account of principal; that the assignment by Miller to Scott was merely colorable; and that no real interest in said judgment passed, or was intended to pass, by the same to said Scott, and that the same is still owned by the said James M. Miller.

Whatever defence Duvall may have had against Miller, he is

estopped by his certificate of no defence from setting it up against Scott, the use-plaintiff, unless, as alleged, the assignment was merely colorable. If Scott purchased the judgment bona fide and upon the faith of the certificate, there is an end of any defence by Duval upon the ground of usury, or for any other reason. Hence the question whether the assignment was colorable was the vital point in the case. If it was a mere sham Duvall had the right to set it up either against Miller or Scott.

The only testimony in the case in support of this allegation in the petition, is the testimony of Duvall himself. I quote his testimony in full upon this point: Q. In your petition you say that you aver, believe, and expect to be able to prove that the assignment by Scott to Miller was merely colorable, and that no real interest in said judgment passed, or was intended to pass, by the same to A. D. Scott; and that said judgment is still owned by the said James M. Miller. A. I did believe it at the time that was drawn up. Q. State any facts within your own knowledge that led you to make that assertion. A. Just because the way Miller talked to me. He always told me he had to do this, and did not tell me anything else, only that he'd done it. Q. That is the reason you made that assertion in this petition? A. Yes, sir; the way he talked to me I thought he still held the notes yet and owned it. Q. Any other reason than that? A. I don't mind just now.

This is all there is in the case. On the other hand, Mr. Scott testified that he bought the judgment upon the faith of the certificate, and paid for it in cash the sum of $520. He is corroborated by Miller, and they both deny everything that Duvall testified to that is of any importance touching the consideration and good faith of the transfer.

It will thus be seen that the judgment was opened, resulting in an expensive jury trial, without so much as a scintilla of evidence to support the material averments of the petition. It is hardly necessary for us to say that this was error.

The decree is reversed at the costs of the appellee, and the petition dismissed.

## MILLER v. DUVALL.

We have just decided in Scott's Appeal that it was error to

open the judgment. It follows that the trial of the issue was an abortive proceeding: English's Appeal, 119 Pa. 533. Aside from this, the case went to the jury upon substantially the same testimony as was taken upon the rule to open the judgment. There was not a scintilla of proof to show that the assignment of the judgment was collusive.

Judgment reversed.

